UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORENZO REDD,

                              Plaintiff,

                   -against-

MEDTRONIC INC., et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-06448 (PMH)

PHILIP M. HALPERN, United States District Judge:

Lorenzo Redd ("Plaintiff"), formerly incarcerated at Woodbourne Correctional Facility ("Woodbourne"), proceeding *pro se* and *in forma pauperis* ("IFP"), commenced this action on July 28, 2021 against Medtronic, Inc. ("Medtronic") and Westchester Medical Center ("WMC" and together, "Defendants"). He alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments in connection with a surgery performed on July 5, 2017 at WMC by Dr. P. Charles Garell ("Garell"), which Plaintiff contends resulted in defective installation of medical screws into his lower back. (Doc. 2, "Compl.").[1] Plaintiff seeks damages in the amount of $20,000,000 for pain and suffering as well as lost future wages. (*Id.*).

Medtronic and WMC each appeared and sought leave to move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 10; Doc. 13). Plaintiff thereafter twice requested, and was granted, leave to amend his Complaint. (*See* Doc. 30; Doc. 49). Plaintiff, however, never filed an amended complaint, so the Court granted Defendants leave to move to dismiss. (Doc. 54). Defendants, in accordance with the briefing schedule set by the Court, filed

---

[1] Plaintiff filed another case relating to this same surgery, naming, *inter alia*, WMC and Garell as defendants. That case is currently proceeding before Judge Briccetti and, as of the date of this Memorandum Opinion and Order, has motions for summary judgment *sub judice*. *See Redd v. Garell*, No. 18-CV-09436 (S.D.N.Y.).

their motions to dismiss supported by a joint memorandum of law, on March 30, 2022. (Doc. 57; Doc. 57-1, "Def. Br."; Doc. 58). Plaintiff did not file any opposition to Defendants' motions.[2]

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## <u>BACKGROUND</u>

Plaintiff alleges that, on April 18, 2017, prior to a pending spinal cord surgery, he consulted with Garell at Putnam Medical Hospital. (Compl. at 4). Plaintiff alleges that, at this consultation, Garell told him that titanium screws and metal rods would be placed in his spinal cord area, that they would not cause too much pain, and that they "will not have to be replaced or even break at all, or move around while attached to [Plaintiff's] spinal cord area, they are permanent." (*Id.*). Garell, on July 5, 2017, performed the surgery and installed the screws and rods into Plaintiff's lower back. (*Id.*). Plaintiff complained to Garell in the months following his surgery—specifically on August 7, 2017, October 30, 2017, February 6, 2018, March 27, 2018, and May 1, 2018— stating that: he had limited mobility in his lower back while bending forward, sitting down for long periods, and standing; he suffered acute pain while using the bathroom and saw blood in his stool; and he felt numbness in his right foot and toes when he walked for more than five minutes. (*Id.* at 4-5). Plaintiff alleges that on July 17, 2018, approximately one year after the surgery, he heard and felt a crack in his lower back when getting out of bed and that he could not walk for approximately four days thereafter. (*Id.* at 5). Plaintiff was taken to WMC on August 1, 2018, where he received

---

[2] Plaintiff's opposition to Defendants' motions was due April 29, 2022. (Doc. 54). The docket indicates that a copy of the Court's Order setting the briefing schedule was mailed to Plaintiff. (Doc. 56). On March 30, 2022, Defendants filed an affidavit of service demonstrating service of the moving papers on Plaintiff. (Doc. 60). Plaintiff did not file opposition. On May 16, 2022, the Court *sua sponte* extended Plaintiff's time to oppose the motions to June 16, 2022, warned Plaintiff no further extensions would be granted, and cautioned that if Plaintiff failed to file opposition by June 16, 2022, the motions would be deemed fully submitted and unopposed. (Doc. 64). The Court's May 16, 2022 Order was mailed to Plaintiff. (May 17, 2022 Mailing Receipt). The Court, therefore, on June 27, 2022, deemed Defendants' motions fully submitted and unopposed.

a Magnetic Resonating Imagery CT scan that revealed the screws in his back to be "broken" and in need of a second surgery to replace. (*Id.* at 6).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)).

However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

When deciding an unopposed motion to dismiss (as is the case here with respect to Defendants' motions), "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is to be given a reasonable opportunity to respond

4

to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

Plaintiff brings his Complaint under § 1983, which provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.[3] "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id*.; *see also Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-08586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

---

[3] Plaintiff purports to bring his § 1983 claims under both the Eighth and the Fourteenth Amendments. However, "[b]ecause plaintiff was a convicted prisoner when the events giving rise to his claim occurred, his claim arises under the Eighth Amendment, [and] not the Fourteenth." *See Redd v. Garell*, No. 18-CV-09436, 2020 WL 1189491, at *3 (S.D.N.Y. Mar. 12, 2020) (citing *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017)).

Defendants each move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 57; Doc. 58). Medtronic argues that: (i) because it is a private entity, it is not subject to liability under § 1983; and (ii) the Complaint fails to state a products liability claim. (Def. Br. at 3-9). WMC argues that Plaintiff fails to state a claim against it for deliberate indifference to medical needs. (Def. Br. at 13-14). The Court will address Defendants' motions and the arguments raised therein *seriatim*.

I.   Constitutional Claims Against Medtronic

Generally, a private party who does not work for any state or other government body, would not be subject to liability under § 1983. *See Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). A private entity can qualify as a state actor under § 1983, however, if the link between the state action and the private actor's action is so close that the private actor's action "may be fairly treated as that of the State itself." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 229 (2d Cir. 2004) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003) (A "private actor [who] operates as a willful participant in joint activity with the State or its agents" may be considered a state actor under § 1983) (citation omitted); *Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984) (to constitute joint participation in satisfaction of the state action requirement under § 1983, there must be a "meeting of the minds or intent to conspire" between the private defendant and a state actor). Nevertheless, § 1983 does not "impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who act under color of law." *Ginsberg v. Healey Car and Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir. 1999) (citation omitted).

6

That Plaintiff alleges Medtronic to have manufactured medical items used by a state actor in a surgery is insufficient to establish that Medtronic is a state actor. *See Abergel v. Gracie Square Hosp.*, No. 19-CV-05689, 2019 WL 3219457, at *2 (S.D.N.Y. July 15, 2019) (dismissing § 1983 claims alleged against private actors relating to medical malpractice and products liability). The Complaint is devoid of any allegation that Medtronic operated as a willful participant in a joint activity with a state actor or that Medtronic conspired with a state actor. Plaintiff is simply unable to raise § 1983 claims against Medtronic.

Plaintiff's constitutional claims against Medtronic are, accordingly, dismissed with prejudice.

II.    Products Liability Claim Against Medtronic

The Court, considering Plaintiff's Complaint with the liberality required of *pro se* pleadings, construes the Complaint as asserting a products liability claim against Medtronic under New York law. To state a claim "for injuries caused by an allegedly defective product[,] [Plaintiff's claim may proceed] under theories of negligence, strict liability, or breach of express or implied warranty." *Lewis v. Abbott Labs.*, No. 08-CV-07480, 2009 WL 2231701, at *4 (S.D.N.Y. July 24, 2009). To support a products liability claim under a theory of negligence or strict liability, a plaintiff must show that "the product at issue was (1) defective, and (2) the defect was a substantial factor in causing the injury." *Id.*; *see also Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 509 (S.D.N.Y. 2018) (the standard for negligence and strict liability is functionally the same in products liability cases). The pleading must allege specifically that the product at issue had a design defect, that Medtronic failed to warn of a risk of injury, or that the specific product used had a defect in its manufacturing. *Lewis*, 2009 WL 2231701, at *4. While Plaintiff alleges that medical screws broke after they were installed in his back and caused him injury, (Compl. at 4-5), he does

not allege facts sufficient to state a products liability claim under any of these three theories. The bare allegation that the screws were "broken" does not speak to their design, manufacture, or any warnings (or lack thereof) by Medtronic. *See, e.g. Adams v. Stryker Ortho.*, No. 15-CV-07098, 2016 WL 2993213 (S.D.N.Y. May 23, 2016) (dismissing a products liability claim where plaintiff only alleged that "the device was defective because it 'broke through no fault of plaintiff'").[4]

Plaintiff's products liability claim is, accordingly, dismissed with prejudice.[5]

III.    Deliberate Indifference Against WMC

Plaintiff raises a claim for Eighth Amendment deliberate indifference to medical needs under § 1983 against WMC. The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must, *inter alia*, "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)); *see also Rembert v. Cheverko*, No. 12-CV-09196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer*, 511 U.S. at 832-33); *Randle v. Alexander*, 960 F. Supp.

---

[4] Already given two opportunities to amend the Complaint—each of which occurred after Medtronic first identified deficiencies in Plaintiff's products liability claim in its pre-motion letter at Doc. 10—and failure to oppose the instant motion, Plaintiff is not entitled to yet another opportunity to argue this claim. *See Barnett v. Rockland Cnty. Jail Matnice*, No. 22-CV-02755, 2022 WL 1775716, at *2 (S.D.N.Y. June 1, 2022) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)).

[5] Medtronic also argues that punitive damages are inappropriate here. The Court need not and does not consider the applicability of this remedy given the dismissal of each of Plaintiff's underlying claims for relief.

2d 457, 471 (S.D.N.Y. 2013). As such, the Eighth Amendment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 832, 844). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020). Generally, as explained by this Court previously:

> [t]he first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain.
>
> . . . .
>
> The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id*. at *4-5 (internal citations and quotation marks omitted).

This test exists with a caveat: "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical

practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara v. Pataki*, No. 06-CV-06123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").

i.    The Objective Prong

The first prong, the "objective prong," requires facts establishing that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (internal quotation marks omitted). Plaintiff's allegation that medical screws broke while installed in his back, causing him severe injury, is sufficiently serious harm to support the objective prong of this test.

ii.    The Subjective Prong

The second prong, the "subjective prong," requires action "with a sufficiently culpable state of mind." *Morgan*, 956 F.3d at 89 (internal quotation marks omitted). The subjective prong requires that Plaintiff allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "It is not enough to show that Defendants lacked due care; rather, Plaintiff must establish that the defendants' conduct 'involved obduracy and wantonness in placing [the plaintiff's] health in danger.'" *Boomer*, 2021 WL 1163658, at *4 (quoting *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (alteration in original)). Moreover, mere negligence is insufficient to support this prong. *Haynes v. City of New York*, No. 19-CV-01925, 2020 WL

4926178, at *11 (S.D.N.Y. Aug. 20, 2020) ("[A]llegations of negligent misdiagnosis . . . do not

suggest that the defendant acted with a conscious disregard to inmate health or safety." (internal

quotation marks omitted, first alteration added)); *Lainez v. Roycroft*, No. 18-CV-06754, 2019 WL

4934009, at *3 (S.D.N.Y. Oct. 7, 2019) ("[P]laintiff's complaints lack any allegation that his

misdiagnosis was caused by anything other than . . . negligence."); *Snyder v. Alam*, No. 15-CV-

04033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016). There is simply no plausible allegation

that WMC acted with a culpable state of mind here. Rather, Plaintiff acknowledges that WMC

identified the issue and replaced the broken screws in follow up care rendered to him.

Based upon the foregoing, Plaintiff fails to plead facts supporting the subjective prong of

a claim under the Eighth Amendment in connection with his medical care. His claim against WMC

is, accordingly, dismissed with prejudice. *See Reed*, 541 F. App'x at 41.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Plaintiff's

claims against Medtronic and WMC are dismissed with prejudice.

Plaintiff cannot cure the defects in the Complaint through amendment. While "[d]istrict

courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to

amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x

40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Moreover,

"leave to amend may be denied if [as here] the plaintiff has already been given an opportunity to

amend but has failed to cure the complaint's deficiencies." *Barnett*, 2022 WL 1775716, at *2.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order of

Dismissal would not be taken in good faith, and therefore IFP status is denied for the purpose of

an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequences pending at Doc. 57 and Doc. 58; (ii) mail a copy of this Memorandum Opinion and Order to Plaintiff; and (iii) close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          December 12, 2022

_____

PHILIP M. HALPERN
United States District Judge